PeaRSON, O. J.
The demurrer raises two questions:
1. The construction of the marriage articles.
2. The effect of the lapse of time during which the defendant Gray has been in possession, enjoying the property as absolute owner, and the presumption of a satisfaction or abandonment of the equity.
Our opinion inclines with the defendants on both of these questions; but, as the amount involved is very large, and the Court is not, by the bill, as now framed, put in possession of all the facts and circumstances which are relevant and may have an important bearing on its decision, we will avail ourselves of the fact, that the orders and decrees of this Court are not necessarily absolute like a judgment in a court of law, but may be “ moulded and shaped to meet the exigence of each particular case,” and order the demurrer to be overruled without allowing costs, and without prejudice to the equity or *9 defense of the defendants which may be set up by plea or answer as they shall be advised, for the purpose of giving the plaintiff an opportunity of amending the bill by making further allegations, and the defendants an opportunity to rely on the presumption of satisfaction, release or abandonment of the equity by plea, (if so advised) and of afterwards setting out all of the facts and circumstances relevant to the question by averment in their answer, should the plea be overruled.
1. The plaintiff alleges that by the proper construction of the marriage articles, the legal effect is to give an estate to the wife for life in all of the estate belonging to her before the marriage, with full power to dispose of it by giving it to her relations or friends, unless there .should be issue of the marriage ; in which event, the intention was to vest the ulterior interest after the life-estate, in such child or children, and be insists that although this intention of making a limitation over in favor of any child or children that might be born of the marriage is not expressed in the articles, it will be implied by the Court from the nature of the relation which the parties had in contemplation, which furnishes the natural and ordinary presumption that the intention is to provide, as well for the issue of the marriage as for the wife, and relies on the fact that this is an executory, as distinguished from an executed trust, where greater latitude of construction is allowed, in order to give effect to the apparent intention of the parties, and the Court is not bound by the use or omission of technical words.
On the part of the defendants, it is insisted that the only purpose of the parties, in making the marriage articles, was to give to Mi's. -Gray power to dispose of the estate which she owned before the marriage, by giving it to her relations and friends, with a restriction upon the power, in case she should have children, and that no limitation was intended to he made and none in fact was made, so as to vest in them an estate after her death; for, if she died first, the husband, it was presumed, would be able to provide for the children, and if he died first, they would be amply provided for out of his estate, and out of the estate winch was secured to her. In aid of *10 this construction, it was urged that the subsequent acts of the parties were in conformity thereto ; for, after the birth of a child, and the death of his wife, General Gray treated the marriage articles as having no further force or effect, and used and disposed of the property as if absolutely his own, and Moore and wife so acted in respect to the land, by selling him the reversion after his life-estate ; whereas, if the articles liad been in force, according to the construction contended for by the plaintiff, he was not entitled to an estate for life as tenant by the curtesy, and Mrs. Moore was entitled to the whole estate, and not simply to a reversion.
It is manifest that the condition of the parties, and the state of things at the date of the marriage, may have an important bearing upon this question of construction, and the Court should be put in possession of all the facts: was General Gray an improvident, thriftless or dissipated man ? — a man of no property, and “afortune hunter,” who was not likely to be able to take care of his children ? Or was he a prudent business man, with property of his own, and one who could reasonably be confided in to take care of his children, if he should have any ? What was the age of Mrs. Parke at the date of her contemplated second marriage? How long had she been married to her first husband without having borne a child? Had she any destitute relatives for whom she supposed herself under an obligation to provide?
These facts have an important bearing as tending to distinguish the case from that of two young people just starting in life, with wh^m the first and uppermost idea on their marriage is to make a provision for children ; whereas, in this case, judging by the face of the articles, the most prominent idea was to give the wife power, notwithstanding her marriage, to provide for “ her kin-folks.”
2. As Moore had power to receive and accept satisfaction for, or release his wife’s equity, a presumption arises from the lapse of time during which the defendant Gray had possession gnd used the property as his, even according to the case of Gotten v. Davis, 2 Jones Eq. 430, unless the defendants are *11 able to account for the delay, or to repel the presumption. It was said on the argument that Moore, the husband of plaintiff’s intestate was not informed of the existence of the marriage articles, and of the estate which had vested in her by-force thereof until within less than two years before the bill was filed. This fact is not distinctly alleged in the bill, and our purpose in not disposing of the case definitely at this stage, is to give the plaintiff an opportunity to amend his bill, and aver the fact distinctly, if it is so, and present the question whether ignorance of the right will prevent the presumption.
It was also said, on the argument, that the admissions of General Gray7, when a demand was made and his attention was called to the existence of the marriage articles, and particularly his offer to refer the matter to the arbitration of mutual friends is sufficient to repel the presumption. These matters are not set out in the bill-with the degree of certainty7 necessary to give to the demurrer the effect of a positive admis-; sion which would repel the presumption; and the demurrer is overruled for the purpose of removing all difficulty in this respect. The plaintiff may7 amend his bill and charge these matters with certainty7 by way of anticipating the plea of the defendants, (if they are so advised) setting out the fact of the long enjoyment and possession of the property, and relying on the presumption of a release, or satisfaction or abandonment, which the law makes therefrom.
Whither the defendants will be required to answer, in support of this plea, an allegation in the bill charging that there has been no satisfaction and no release, will be an interesting question in regard to which we intimate no- opinion. The statute, and the rule of the common law, obviously give to-the lapse of time a technical effect over and beyond that of a mere circumstance, as upon an enquiry in regard to an open question of fact. Whether it is consistent witli the policy of this rule to require a party to make admissions as to the matter of fact which will defeat his plea, is a question we leave for future consideration.
Per Curiam, Demurrer overruled without costs, and without prejudice.